UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 18-25329-CIV-ALTONAGA/McAliley

CHANGE CAPITAL PARTNERS
FUND I, LLC,

    Plaintiff,
v.

OTI FIBER LLC,

    Defendant.
_____/

## ORDER

**THIS CAUSE** came before the Court on Defendant, OTI Fiber LLC's Motion for Summary Judgment [ECF No. 76], filed August 18, 2019. Plaintiff, Change Capital Partners Fund I, LLC, filed a Memorandum in Opposition [ECF No. 80]; to which Defendant filed a Reply [ECF No. 88]. The Court has carefully considered the Amended Complaint [ECF No. 39], the parties' written submissions,[1] the record, and applicable law. For the following reasons, the Motion is denied.

## I.    BACKGROUND

This is an action for breach of contract. (*See generally* Am. Compl.). Plaintiff, Change Capital Partners Fund I, LLC, is a Delaware limited liability company with its principal place of business in New York; and Defendant, OTI Fiber LLC, is a Florida limited liability company with

---

[1] The parties' factual submissions include: Defendant's Statement of Material Facts ("Def.'s Facts") [ECF No. 77]; Plaintiff's Response to Defendant's Statement of Material Facts ("Pl.'s Facts") [ECF No. 81]; and Defendant's Reply to Plaintiff's Additional Material Facts ("Def.'s Reply Facts") [ECF No. 89].

its principal place of business in Florida.[2] (*See* Am. Compl. ¶¶ 2–3). Plaintiff contends Defendant failed to make payments Plaintiff, as an assignee, was owed under certain agreements. (*See generally id.*). Plaintiff's claim arises from a basic set of facts.

Between June 6, 2016 and August 19, 2016, non-parties, Azadian Group LLC ("Azadian") and Florida Fiber Networks LLC ("FFN"), entered into three Merchant Receivables Purchase and Security Agreements.[3] (*See* Def.'s Facts ¶ 1). Under the Merchant Agreements, Azadian purchased FFN's right, title, and interest in a percentage of future receivables. (*See generally* Merchant Agreements). The terms of the Merchant Agreements are essentially identical. (*See id.*).

In February 2017, Azadian assigned "all of its rights and obligations" under the Merchant Agreements to Plaintiff. (Am. Compl., Ex. 7, Assignment [ECF No. 39-7]). The Assignment provides:

1. [Azadian] and [Plaintiff] hereby agree that [Azadian] shall assign all its right, title, and interest, and delegate all its obligations, responsibilities and duties in and to the [Merchant] Agreements, to [Plaintiff].

2. [Plaintiff] hereby accepts the assignment of all of [Azadian's] obligations, responsibilities and duties under the [Merchant] Agreements and all of [Azadian's] right, title and interest in and to the [Merchant] Agreements.

(*Id.* (alterations added)). Plaintiff acknowledges with the Assignment, Azadian assigned all of its rights, title, and interest in the Merchant Agreements to Plaintiff. (*See* Def.'s Facts ¶ 3; Pl.'s Facts ¶ 3).

---

[2] Plaintiff voluntarily dismissed Defendant, Optical Communications, Inc., on January 28, 2019. (*See* Notice of Voluntary Dismissal Without Prejudice [ECF No. 40]).

[3] (*See* Am. Compl., Ex. 1, June 6, 2016 Merchant Receivables Purchase and Security Agreement [ECF No. 39-1]; *id.*, Ex. 2, July 28, 2016 Merchant Receivables Purchase and Security Agreement [ECF No. 39-2]; *id.*, Ex. 3, August 19, 2016 Merchant Receivables Purchase and Security Agreement [ECF No. 39-3]). Collectively, these agreements are referred to as the "Merchant Agreements."

In November 2016, Defendant and FFN entered into an Asset Purchase Agreement[4] ("APA"). (*See* Def.'s Facts ¶ 4). The APA was executed after the Merchant Agreements but before the Assignment. (*See id.* ¶¶ 1–2, 4). Included in the APA was a provision that set out the aggregate purchase price in multiple parts. (*See* APA 8–9). In this regard, Section 2.4(b)(v) provides a portion of the purchase price to be paid as follows:

> $2,302,427.23 pursuant to purchase money financing which will be evidenced by a promissory note substantially in the form attached hereto as Schedule 2.4(b)(iii) (the "Purchase Money Note") payable in four monthly payments of $325,606.81 beginning thirty (30) days after closing (the "Installment Payments") and one last payment on the thirteenth month anniversary of the Closing Date (the "Hold Back"). The Purchase Money Note shall not accrue interest unless in default. Buyer shall make the payments due under the terms of Purchase Money Note as follows: first, to make any and all payments due to Azadian Group, LLC, Yellowstone Capital, LLC and Pearl Capital, LLC then, and only after all obligations due to Azadian, Yellowstone and Pearl are satisfied in full, to the Seller.

(*Id.* 9). This portion of the purchase price was funded by a Purchase Money Promissory Note (the "Note"). (*See generally* Am. Compl., Ex. 5, Purchase Money Promissory Note [ECF No. 39-5]). The Note is subject to the terms set forth in the APA. (*See id.* 2).

On July 23, 2018, Plaintiff filed this action against Defendant.[5] (*See* Notice of Removal 10). On January 28, 2019, Plaintiff filed the operative Amended Complaint, asserting a claim for breach of contract to recover the outstanding amounts due under the APA and the Note. (*See generally* Am. Compl.). Plaintiff seeks to recover $214,300.00 — the amount owed to Azadian under the APA, and in connection with the Merchant Agreements, as of January 2017. (*See id.* ¶¶ 13, 18).

---

[4] (*See* Am. Compl., Ex. 4, Asset Purchase Agreement [ECF No. 39-4]).

[5] Plaintiff initially sued Defendant in New York state court. (*See generally* Notice of Removal [ECF No. 3]). Defendant removed the case, and the parties agreed to its transfer to this District in December 2018. (*See* [ECF Nos. 11–13]).

Defendant moves for entry of summary judgment in its favor, arguing the Assignment relates only to Azadian's rights under the Merchant Agreements, and thus the Assignment does not give Plaintiff standing to bring claims related to the APA or Note. (*See* Mot. 2). Plaintiff opposes summary judgment, arguing the Assignment gives it Azadian's rights under the APA and Note. (*See* Opp'n 2).

## II.     LEGAL STANDARD

Summary judgment may only be rendered if the pleadings, discovery and disclosure materials on file, and any affidavits show there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a), (c). An issue of fact is "material" if it might affect the outcome of the case under the governing law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). It is "genuine" if the evidence could lead a reasonable jury to find for the non-moving party. *See id.*; *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The Court draws all reasonable inferences in favor of the party opposing summary judgment. *See Chapman v. AI Transp.*, 229 F.3d 1012, 1023 (11th Cir. 2000).

If the non-moving party bears the burden of proof at trial, the moving party may obtain summary judgment simply by: (1) establishing the nonexistence of a genuine issue of material fact as to any essential element of a non-moving party's claim, and (2) showing the Court that there is not sufficient evidence to support the non-moving party's case. *See Blackhawk Yachting, LLC v. Tognum Am., Inc.*, No. 12-14209-Civ, 2015 WL 11176299, at *2 (S.D. Fla. June 30, 2015) (citations omitted). "Once the moving party discharges its initial burden, a non-moving party who bears the burden of proof must cite to . . . materials in the record or show that the materials cited do not establish the absence or presence of a genuine dispute." *Id*. (citing Fed. R. Civ. P. 56(c)(1);

alteration added; internal quotation marks omitted).

"Summary judgment may be inappropriate even where the parties agree on the basic facts, but disagree about the inferences that should be drawn from these facts." W*helan v. Royal Caribbean Cruises Ltd.*, No. 1:12-cv-22481, 2013 WL 5583970, at *2 (S.D. Fla. Aug. 14, 2013) (citation omitted). Indeed, "[i]f reasonable minds might differ on the inferences arising from undisputed facts, then the Court should deny summary judgment" and proceed to trial. *See id.* (alteration added; citations omitted).

### III. ANALYSIS

Defendant argues summary judgment is appropriate because Plaintiff was never assigned the rights it now seeks to enforce against Defendant and thus lacks standing to assert a claim for breach of contract. (*See* Mot. 2). Specifically, Defendant insists the Assignment does not include any third-party rights that Azadian may have had under the APA and Note, nor does it include any rights or claims against Defendant. (*See id.* 6–7; Reply 1–2).

Defendant's arguments raise an issue of contract interpretation. Under Florida law,[6] if a contract is clear and unambiguous, the Court must interpret "the contract in accordance with its plain meaning, and, unless an ambiguity exists, . . . [will] not resort to outside evidence or the complex rules of construction to construe the contract." *Key v. Allstate Ins. Co.*, 90 F.3d 1546, 1549 (11th Cir. 1996) (alterations added; citations omitted). The interpretation of a contract — including whether a term is ambiguous — is a question of law to be decided by the Court. *See Team Land Dev., Inc. v. Anzac Contractors, Inc.*, 811 So. 2d 698, 699–700 (Fla. 1st DCA 2002) (citation omitted). Yet, "when the terms of a written instrument are disputed and rationally

---

[6] The parties do not raise a conflict-of-laws issue and do not dispute Florida law governs the interpretation of the APA and Note. (*See generally* Mot; Opp'n). Both agreements upon which the Amended Complaint is predicated contain choice-of-law provisions that select Florida law. (*See* APA 28; Purchase Money Promissory Note 2).

susceptible to more than one construction, an issue of fact is presented which cannot properly be resolved by summary judgment." *Chhabra v. Morales*, 906 So. 2d 1261, 1262 (Fla. 4th DCA 2005) (internal quotation marks and citation omitted).

An assignment of a contract must be interpreted under the same guidelines. *See Slip-N-Slide Records, Inc. v. TVT Records, LLC*, No. 05-Civ-21113, 2007 WL 3232270, at *4 (S.D. Fla. Oct. 31, 2007). An assignment of a contract is a "transfer of all the interests and rights to the thing assigned. Following an assignment, the assignee 'stands in the shoes of the assignor' and the 'assignor retains no rights to enforce the contract' at all." *Sierra Equity Grp., Inc. v. White Oak Equity Partners, LLC*, 650 F. Supp. 2d 1213, 1227 (S.D. Fla. 2009) (quoting *Leesburg Cmty. Cancer Ctr. v. Leesburg Reg'l Med. Ctr., Inc.*, 972 So. 2d 203, 206 (Fla. 5th DCA 2007)). Where "the terms of the assignment agreement are qualified, [] the assignment may be construed as being limited by its terms . . . ." *Slip-N-Slide Records*, 2007 WL 3232270, at *4 (S.D. Fla. Oct. 31, 2007) (alterations added; citations omitted). In construing an assignment, the Court must determine "(1) exactly what has been assigned to make certain that the plaintiff-assignee is the real party in interest, and (2) that a valid assignment has been made." *Univ. Creek Assocs., II, Ltd., v. Boston Am. Fin. Grp., Inc.*, 100 F. Supp. 2d 1337, 1339 (S.D. Fla. 1998) (citation omitted).

The validity of the Assignment is not disputed. (*See generally* Mot.; Opp'n). The Court therefore limits its analysis to the scope of the Assignment.

Defendant contends Plaintiff cannot assert any claims based on the APA or Note, given the Assignment's limited and qualified language. (*See* Mot. 6-7; Reply 4–6). Defendant argues the Assignment is narrow, encompassing only the rights, obligations, and benefits of the Merchant Agreements. (*See* Mot. 6; Reply 5–6). Because Plaintiff's breach-of-contract claim is predicated on the APA and Note — agreements that are wholly separate and distinct from the Merchant

Agreements — Defendant insists Plaintiff's cause of action fails as a matter of law and thus summary judgment is appropriate. (*See* Mot. 6–7). In support, Defendant relies entirely upon what it contends to be the Assignment's plain language. (*See id.*; Reply 4–6).

To this, Plaintiff argues[7] Azadian entered into an unqualified Assignment by which it transferred all of the rights and interests at issue to Plaintiff. (*See* Opp'n 10–11). Plaintiff contends the unqualified Assignment is broad, encompassing the rights to receive "payments due to Azadian" and to enforce "obligations due to Azadian." (*Id.* 14). Plaintiff further claims the multiple documents governing the relationship between the parties — the APA, Note, Assignment, and Merchant Agreements — are interrelated and must be read together rather than separately, as insisted by Defendant. (*See id.* 10–14). In support, Plaintiff references multiple provisions, which it asserts provide a holistic reading that gives force and effect to the Assignment. (*See id.* 10–11).

By way of example, Plaintiff cites to Section 2.4(b)(v) of the APA,[8] which defines how Defendant would pay a portion of the purchase price to non-party, FFN. (*See id.* 10). Section 2.4(b)(v) sets out the specific order by which Defendant is required to make payments under the terms of the APA and Note. (*See* APA 9). It first obligates Defendant to make "any and all payments due to Azadian Group, LLC . . . ." (*Id.* 9 (alteration added)). It then adds that only after

---

[7] Plaintiff expends considerable effort arguing Azadian and Plaintiff are third-party beneficiaries under the APA. (*See* Opp'n 4–10). Defendant emphasizes the issue raised in its Motion is whether Plaintiff was assigned Azadian's purported rights in the APA. (*See* Reply 2–3 ("To be clear, the issue raised in OTI's Motion was that Change Capital was not assigned Azadian's purported rights in the APA.")). The Court thus limits its discussion to the sole issue raised in the Motion.

Plaintiff also contends, in a footnote, Defendant cannot seek summary judgment on an unpled affirmative defense — specifically, the issue of Plaintiff's standing as assignee of Azadian. (*See* Opp'n 4). Because the Court finds genuine disputes of material fact preclude entry of summary judgment, it does not reach Plaintiff's alternative argument.

[8] Plaintiff cites other provisions in support of its contention summary judgment is inappropriate. (*See* Opp'n 7, 10–11; *see also* Pl.'s Facts ¶¶ 5, 25). Because genuine disputes of material fact exist, the Court declines to delve into the details of each specific provision cited by Plaintiff.

"all obligations due to Azadian . . . are satisfied in full," does Defendant pay the remaining portion of the purchase price pursuant to the Note to FFN. (*Id.* (alteration added)).

Plaintiff insists the Assignment conveyed the specific right to receive payments from Defendant under Section 2.4(b)(v) of the APA. (*See* Opp'n 10–11). According to Plaintiff, the only payments and obligations due to Azadian under Section 2.4(b)(v) are those found in the Merchant Agreements. (*See id.* 10). In this regard, Plaintiff contends the Assignment expressly includes "all of [Azadian's] rights and obligations" under the Merchant Agreements (*id.* (alteration in original; internal quotation marks omitted; quoting Assignment)); put another way, the broad language assigning all rights and obligations under the Merchant Agreements includes the right to collect any and all amounts owed to Azadian (*see id.* 13–14). Thus, Plaintiff maintains that Defendant must satisfy in full all obligations under the Merchant Agreements, as required by Section 2.4(b)(v), to Plaintiff.

As should be readily apparent from the parties' submissions and differing interpretations, issues of material fact preclude the entry of summary judgment. The parties clearly disagree[9] on the scope of the Assignment and most pertinently, the interplay between the APA, Note, Assignment, and Merchant Agreements. Defendant insists the Assignment can only be interpreted as a qualified assignment limited solely to Azadian's rights, obligations, and benefits under the Merchant Agreements. Under Plaintiff's competing position, the Assignment can only be interpreted as an unqualified assignment that confers both the right to receive payments and the right to enforce the obligations due to Azadian under the APA and Note.

---

[9] The parties also dispute the importance of much of the extrinsic evidence in the record, including discovery responses, deposition testimony, letters, and a submitted declaration. (*See* Def.'s Facts ¶¶ 9–10; Pl.'s Facts ¶¶ 12–31; Def.'s Reply Facts ¶¶ 12–31).

Both parties present reasonable arguments to support their respective understandings of the Assignment. The Court will not settle these interpretation disputes by summary judgment. "Although contract interpretation is generally a question of law for the Court, if the contract contains ambiguities a question of fact for the jury may be presented." *Nature's Prods., Inc. v. Natrol, Inc.*, 990 F. Supp. 2d 1307, 1314 (S.D. Fla. 2013) (alterations, internal quotation marks, and citations omitted). And "[w]here the terms of a contract are disputed and reasonably susceptible to more than one construction, an issue of fact is presented which cannot properly be resolved by summary judgment." *Graham v. Lloyd's Underwriters at London*, 964 So. 2d 269, 274–75 (Fla. 2d DCA 2007) (alteration added; citations omitted).

The Assignment is not so clear and concrete as to enable the Court to decide its scope as a matter of law. One can reasonably interpret the Assignment — when read together with all agreements involved — to apply to the APA and Note; while another could reasonably interpret the Assignment as limited in scope. Faced with these differing constructions, and drawing all reasonable inferences in favor of Plaintiff, Defendant's Motion must be denied.

### IV. CONCLUSION

For the foregoing reasons, it is **ORDERED AND ADJUDGED** that Defendant, OTI Fiber LLC's Motion for Summary Judgment **[ECF No. 76]** is **DENIED**.

**DONE AND ORDERED** in Miami, Florida, this 28th day of October, 2019.

_____
**CECILIA M. ALTONAGA**
**UNITED STATES DISTRICT JUDGE**

cc: counsel of record